UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| GLENN DURGIN, INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED | CASE NO. 6:19-CV-00721 |
| VERSUS | DISTRICT JUDGE SUMMERHAYS |
| ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY | MAGISTRATE JUDGE WHITEHURST |

## MEMORANDUM RULING

The present matter before the Court is a Motion to Dismiss [ECF No. 11] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by defendant Allstate Property & Casualty Insurance Company ("Allstate"). Allstate contends that the complaint should be dismissed because the plaintiff has failed to participate in the appraisal process required by the plaintiff's Allstate insurance policy. Alternatively, Allstate contends that the plaintiff's claims are prescribed and that he has failed to state a claim upon which relief can be granted. Allstate also seeks an order compelling the plaintiff to participate in the appraisal process. For the reasons stated below, the court **DENIES** the Motion to Dismiss and **DENIES** Allstate's request to compel an appraisal.

### I.
#### BACKGROUND

Plaintiff Glenn Durgin is a Louisiana resident who holds an automobile insurance policy issued by Allstate. Durgin's 2013 Ford F-150 truck was damaged in the South Louisiana floods of August 2016, and the flood damage exceeded the value of the truck. (Plaintiff's Complaint, ECF No. 1 at ¶ 7) Durgin filed a claim with Allstate. (*Id*. at ¶ 8). Durgin's insurance policy requires

Allstate to pay the actual cash value ("ACV") of a vehicle that, like Durgin's truck, sustains a total loss. (*Id*. at ¶ 9). Beginning in 2012, Allstate allegedly started using CCC One Market Valuation Reports marketed and sold by CCC Information Services to determine the ACV of insured vehicles that sustain a total loss. (*Id*. at ¶ 10). CCC's valuation report for Durgin's truck assigned a "base value" of $32,699 and, after accounting for various adjustments, an "adjusted vehicle value" of $34,384. (*Id*. at ¶¶ 16-18) Durgin alleges that CCC applies a "condition adjustment" based on comparable vehicles "but without knowing or examining the condition of the comparables used." (*Id*. at ¶ 19) Durgin also alleges that CCC "employs an algorithm to determine the adjustment amount for comparables that is based on national databases for vehicles and not local markets." (*Id*. at ¶ 20) According to Durgin, CCC's methodology consistently undervalues the ACV for total loss vehicles. For example, Durgin cites the National Automobile Dealers Association ("NADA") report for his truck. This report assigns a value for the truck of $38,685.00, which is approximately $4,301 higher than CCC's adjusted vehicle value. (*Id*. at ¶ 22)

Durgin contends that Allstate's reliance on CCC's One Market Valuation Reports to determine a total loss vehicle's ACV violates LSA-R.S. 22:1892(B)(5). This provision states:

> When an insurance policy provides for the adjustment and settlement of first-party motor vehicle total losses on the basis of actual cash value or replacement with another of like kind and quality, and the insurer elects a cash settlement based on the actual cost to purchase a comparable motor vehicle, such costs shall be derived by using one of the following:
>
> (a)  A fair market value survey conducted using qualified retail automobile dealers in the local market area as resources. If there are no dealers in the local market area, the nearest reasonable market can be used.
>
> (b)  The retail cost as determined from a generally recognized used motor vehicle industry source; such as, an electronic database, if the valuation documents generated by the database are provided to the first-party claimant, or a guidebook that is available to the general

>public. If the insured demonstrates, by presenting two independent appraisals, based on measurable and discernable factors, including the vehicle's preloss condition, that the vehicle would have a higher cash value in the local market area than the value reflected in the source's database or the guidebook, the local market value shall be used in determining the actual cash value.
>
>(c) A qualified expert appraiser selected and agreed upon by the insured and insurer. The appraiser shall produce a written nonbinding appraisal establishing the actual cash value of the vehicle's preloss condition.
>
>(d) For the purposes of this Paragraph, local market area shall mean a reasonable distance surrounding the area where a motor vehicle is principally garaged, or the usual location of the vehicle covered by the policy.

LSA-R.S. § 22:1892(B)(5). Durgin alleges that CCC's valuation reports violate section 22:1892(B)(5) because they are not a "generally recognized used motor vehicle industry source" but instead are "employed for the specific purpose of undervaluing claims" of Allstate's policyholders. (*Id*. at ¶ 37). According to Durgin, CCC's reports are not generally used by the motor vehicle industry but are "marketed exclusively to insurance companies with the intent of providing increased profits to its insurance company customers by undervaluing total loss vehicle claims." (*Id*. at ¶ 38). Durgin further alleges that Allstate uses the CCC reports to intentionally undervalue the total loss claims of its policyholders, and that Allstate's actions breached the policy and amount to bad faith. (*Id*. at ¶¶ 23-24). In this regard, Allstate allegedly "knew or should have known" that other valuation reports, such as reports issued by the NADA or by Kelley Blue Book, are generally accepted by the industry for purposes of valuing total loss vehicles. (*Id*. at ¶ 25). Durgin alleges that Allstate's actions also violated its "affirmative duty to adjust claims fairly under the requirement of LSA-R.S. 22:892 and LSA-R.S. 22:1973 and that Allstate is therefore liable for penalties and attorney fees." (*Id.* at ¶ 35). Durgin asserts his claims individually as well as on behalf of a proposed class of all past and present Allstate policyholders who have made

claims against their policy for the total loss of a vehicle and had those claims "undervalued through the use of the CCC One Market Valuation Report system and/or other unfair valuation tools used by Allstate Property & Casualty Insurance Company." (*Id*. at ¶ 46).

Allstate subsequently filed the present Motion to Dismiss [ECF No. 11]. Allstate contends that Durgin's Allstate policy contains a provision requiring a binding appraisal at the request of either Durgin or Allstate, and that Allstate timely asserted its right to demand an appraisal. Accordingly, Allstate contends that Durgin's claims should be dismissed pending completion of the appraisal, and that the Court should enter an order compelling Durgin to participate in the appraisal process. Alternatively, Allstate contends that Durgin's claims are prescribed and that he has failed to state a claim upon which relief can be granted.

## II.
### RELEVANT STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate when a complaint fails to state a legally cognizable clam. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In other words, a Rule 12(b)(6) motion "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Id.* at 161-62. When deciding a Rule 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations, quotation marks, and brackets omitted). Moreover, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its

face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). The requirement that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, (2009) (citing *Twombly,* 550 U.S. at 555). In considering a Rule 12(b)(6) motion, a court must limit itself to the contents of the complaint, including documents attached to or incorporated by the complaint, and matters of which the court may take judicial notice. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996); *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).

## III.
### DISCUSSION

### A. Allstate's Request to Dismiss The Case and Compel Appraisal

Allstate first argues that the complaint should be dismissed to allow for the parties to complete a binding appraisal of Durgin's truck. Durgin's Allstate policy states:

> **Right To Appraisal**
>
> Both **you** and **we** have a right to demand an appraisal of the loss. Each will appoint and pay a qualified appraiser. Other appraisal expenses will be shared equally. The two appraisers, or a judge of a court of record, will choose an umpire. Each appraiser will state the actual cash value and the amount of loss. If they disagree, they'll submit their differences to the umpire. A written decision by any two of these three persons will determine the amount of the loss.

(Allstate Policy, Exh. 1 to Allstate's Motion to Dismiss [ECF No. 11-2] at 23). Allstate contends that it invoked its right to an appraisal under this provision in a September 3, 2019 letter to Durgin's counsel. (September 3, 2019 Appraisal Demand, Exh. 2 to Allstate's Motion to Dismiss [ECF No. 11-3]). Allstate contends that Durgin is obligated to participate in the appraisal process and that the Court should dismiss this case pending completion of the appraisal.

The Court has diversity jurisdiction over this case pursuant to 28 U.S.C. §1332. In a diversity case such as this one, the Court applies state substantive law. *Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 269 (5th Cir. 2009); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The parties do not dispute that Louisiana law applies to this case.

**1. Enforceability of Appraisal Provision**

As a threshold matter, Durgin challenges the enforceability of the appraisal provision in Allstate's policy. Appraisal provisions in insurance policies are generally valid and enforceable under Louisiana law. *See Dore v. Shelter Mut. Ins. Co.*, 2013 WL 5915141 at * 3 (La. App. 1 Cir. 11/1/13); *Southern Fidelity Ins. Co. v. Martin*, 2014 WL 12719622 at * 2, 13-cv-0496 (E.D. La. Jan. 3, 2014). At first blush, appraisal provisions in insurance policies are similar to arbitration clauses. Arbitration clauses in insurance policies, however, are void and unenforceable under Louisiana law. *See*, *e.g., Doucet v. Dental Health Plans Mgt. Corp.*, 412 So. 2d 1383, 1384 (La. 1982); *Green Project, Inc. v. Evanston Ins. Co.*, No. 07-cv-7744, 2008 WL 11355074 at * 1-5 (E.D. La. Oct. 8, 2008) (citing La. Rev. Stat. Ann. Section 22:629(A)(2)). While arbitration clauses are barred under Louisiana law, courts distinguish appraisal provisions from arbitration clauses. *See Girard v. Atlantic Mutual Ins. Co.,* 198 So. 2d 444, 446 (La. App. 4 Cir. 1967). According to these courts, while arbitration is deemed a substitute for court proceedings, "appraisal is more akin to the situation where the parties assign selected persons some 'ministerial duty or some matter involving only the ascertainment of fact, requiring no hearing or the exercise of judicial discretion upon the question in dispute.'" *Green Project, Inc.,* 2008 WL 11355074 at * 2 (quoting *Gerard*, 198 So. 2d at 446). Accordingly, an appraisal provision in an insurance policy does not divest a court of jurisdiction, nor could it under Louisiana law. LSA-R.S. § 22:868(A)(2) prohibits any provision in an insurance policy that functions to deprive the courts of jurisdiction

over an action against an insurer. *See also Jarrell v. Southern Fidelity Ins. Co.*, 11-cv-1222, 2011 WL 13213613 at * 1 (E.D. La. Aug. 25, 2011) (citing LSA-R.S. § 22:868(A)(2)).

Durgin, however, contends that Allstate's appraisal provision is unenforceable because it violates section 22:1892(B)(5)(c). That provision states that one of the permissible methodologies for an insurer to determine ACV in a total loss case is through an appraisal by a "qualified expert appraiser selected and agreed upon by the insured and the insurer." LSA-R.S. 22:1892(B)(5)(c). This provision further states that the appraiser "shall produce a written **non-binding** appraisal establishing the actual cash value of the vehicle's preloss condition." *Id.* (emphasis added). Durgin argues that Allstate's appraisal provision violates this requirement because it does not require the parties to agree on a single qualified appraiser and provides that the appraisal will be *binding*. (Opposition to Defendant's Motion to Dismiss [ECF No. 18] at 4). Allstate, however, argues that the non-binding appraisal option under section 22:1892(B)(5)(c) is only one of the methods available to an insurer to determine ACV when the insurer elects a cash settlement, and that section 22:1892(B)(5) does not foreclose Allstate from relying on a binding appraisal process if the parties cannot agree on Allstate's proposed cash settlement. (Allstate's Reply in Support of its Motion to Dismiss [ECF No. 21] at 4-5). Allstate contends that the appraisal provision in the Allstate policy is a broader dispute resolution mechanism encompassing disputes over all types of covered physical damage loss, including disputes between Allstate and its policyholders over Allstate's proposed cash settlement under section 22:1892(B)(5). (*Id.* at 5).

Durgin's argument here turns on his construction of LSA-R.S. 22:1892(B)(5). Section 22:1892(B)(5)(a)-(c) allows Allstate to elect three different methods for formulating a cash settlement based on the actual cost to purchase a comparative vehicle. Only one of these alternatives – section 22:1892(B)(5)(c) – involves a non-binding appraisal process. According to

Durgin, if an insurer selects any valuation methodology under section 22:1892(B)(5) to formulate a cash settlement and a policyholder disputes that settlement offer, section 22:1892(B)(5)(c) prevents the parties from fully and finally resolving this dispute through a binding appraisal process. In other words, section 22:1892(B)(5)(c) eliminates binding appraisals as a dispute resolution mechanism for disputes involving the ACV for total loss claims under Durgin's reading of the statute.

The language of the statute does not support this broad reading of section 22:1892(B)(5)(c). By its terms, section 22:1892(B)(5)(c) only outlines one possible valuation methodology for determining ACV when the insurer elects a cash settlement. It does not mandate that this methodology – a non-binding appraisal – also be used to resolve a dispute over an insurer's proposed ACV and cash settlement regardless of which section 22:1892(B)(5) methodology the insurer selects. Nor does the statute expressly preclude use of a binding appraisal process to resolve a dispute between the insurer and the insured. The statute is silent as to how the parties would resolve such a dispute. This silence is noteworthy given the fact that section 22:1892(B)(5) was enacted against the backdrop of Louisiana jurisprudence enforcing binding appraisal provisions to resolve valuation disputes arising under insurance policies. Accordingly, the binding appraisal provision in Durgin's Allstate policy is valid and enforceable.

**2. Allstate's Request to Dismiss the Complaint Pending Completion of an Appraisal**

The Court's conclusion that Allstate's appraisal provision is enforceable does not, however, mean that Allstate is entitled to the relief that it seeks. Allstate requests that Durgin's complaint be dismissed because the parties have not completed the appraisal process. Allstate argues that the crux of this case is merely a dispute over the dollar amount of the loss on Durgin's total loss claim. [ECF No. 11-1 at 4]. Because, according to Allstate, the dollar amount of

Durgin's loss has not been determined through the appraisal process required by Durgin's policy, Durgin cannot claim that Allstate has failed to pay the full amount of Durgin's loss; accordingly, "there is no cause of action for breach of contract as a matter of law." [*Id*.].

Allstate's argument for dismissal is grounded on a purported identity between Durgin's claims and the valuation resulting from the contractual appraisal process. But closer examination of Durgin's claims shows that there is no such identity. Durgin grounds his breach of contract and bad faith claims on his allegation that Allstate's use of CCC One Market Valuation Reports violates Louisiana law because these reports do not comply with the three valuation methodologies dictated in LSA-R.S. § 22:1892(B). [ECF ¶¶ 23-25]. Durgin alleges that, under Louisiana law, his policy must be "reformed" to include the requirements of section 22:1892(B)(5), and that Allstate's failure to pay his "loss" according to these requirements is a breach of his policy. [*Id*. at ¶ 30]. Whether the CCC's valuation methodology comports with section 22:1892(B)(5) will turn on factors such as whether this report is "a generally recognized used motor vehicle industry source;" or whether it is based on "the use of fair market survey conducted using qualified retail automobile dealers and the local market, or the nearest reasonable market if there are no dealers at the local market." [*Id*. at ¶¶ 13-14] (citing LSA-R.S. 22:1892(B)(5)(a) and (b)). Thus, the legal and factual questions that undergird Durgin's claims involve Allstate's compliance with Louisiana law, not the mere calculation of a total loss figure for his truck. An appraisal would not resolve these legal and factual questions. Louisiana courts have emphasized that the role of an appraiser appointed to determine the total loss under a property insurance policy is "merely to ascertain the cash value and the extent of the insured's loss. ...." *Girard*, 198 So. 2d at 446. The appraiser's role is "ministerial" and involves "only the ascertainment of facts, requiring no hearing nor the exercise of judicial discretion upon the question in dispute." *Id.*

Allstate cites three cases where courts enforced Louisiana appraisal provisions by purportedly dismissing the cases: *Girard*, 198 So. 2d 444; *Phuong Thi Nuguyen v. Southern Fidelity Ins. Co.*, No. 14-cv-0297, 2014 WL 1276508, at *1 (E.D. La. Mar. 27, 2014); and *Beasley v. Geo Vera Specialty Ins. Co.*, No. 13-cv-395, 2013 WL 3187289 at * 4 (E.D. La. June 20, 2013). These cases are distinguishable. Of these cases, only *Girard* involved the outright dismissal of the case on the grounds that the "penalty for filing a suit prematurely is dismissal." *Girard*, 198 So. 2d at * 447. In both *Nuguyen* and *Beasley*, the courts enforced appraisal provisions, but stayed and administratively closed the cases pending the completion of the appraisal process. *Nuguyen*, 2014 WL 1276508 at * 1; *Beasley*, 2013 WL 3187289 at * 4. More importantly, in all three cases, the core dispute before the court was merely the calculation of a total loss dollar figure, a question that could be resolved by an appraisal. In this case, the "ministerial" act of calculating a total loss figure through an appraisal would not resolve Durgin's claims. The Court, therefore, **DENIES** Allstate's Motion to Dismiss to the extent that it relies on the completion of the appraisal process as a ground to dismiss Durgin's complaint.

### 3. Allstate's Request to Compel an Appraisal

The Court's denial of Allstate's request to dismiss the case does not address Allstate's separate request that the Court compel Durgin to participate in the binding appraisal process set forth in his Allstate policy. Courts applying Louisiana law have enforced appraisal provisions by compelling appraisals and, in some cases, staying cases pending the completion of the appraisal process. *See, e.g.*, *Newman v. Lexington Ins. Co.*, No. 06-cv-4668, 2007 WL 1063578 at * 4 (E.D. La. Apr. 4, 2007) (denying Motion to Dismiss but granting Motion to Compel Appraisal and staying case pending completion of appraisal). The timing of a court-compelled appraisal and the question of whether to stay a case pending completion of an appraisal both fall within a court's

10

broad discretion. *See, e.g., Newman*, 2007 WL 1063578 at * 4 ("The court has wide discretion when determining whether to stay claims pending the appraisal process.") (citing *In re Ramu Corp.,* 903 F.2d 312, 318 (5th Cir. 1990)) *Linnus v. Metropolitan Lloyds Ins. Co. of Tex.*, No. 19-cv-3163, 2020 WL 359905 at *3-4 (S.D. Tex. Jan. 22, 2020) (addressing a motion to compel an appraisal under Texas law and noting that "the court does have some discretion as to the timing of the appraisal."). Accordingly, courts have denied or deferred requests to stay cases pending the completion of an appraisal even where the courts have granted a request to compel the appraisal. *See*, *e.g., Green Project, Inc*., 2008 WL 11355074 at * 5 (ordering plaintiff to participate in the appraisal process required by the insurance policy but denying request to stay case pending completion of the appraisal process); *Boyd v. Occidental Fire & Cas. Co. of N. Carolina*, No. 10-cv-0672, 2011 WL 4062383 at * 1-2 (M.D. La. Sept. 13, 2011) (denying motion to stay case pending completion of appraisal); *Martin* 2014 WL 12719622 at * 3 (granting motion to compel appraisal but deferring request to stay case pending completion of appraisal).

The primary factor that courts consider in deciding whether to compel an appraisal and stay the case is judicial economy and efficiency, namely whether an immediate appraisal may resolve the plaintiff's claims. *See Newman*, 2007 WL 1063578 at * 4 (granting stay and observing that an "[a]ppraisal may settle the dispute in this case"); *Nuguyen*, 2014 WL 1276508 at * 1 (concluding that it "would serve the interests of judicial economy to stay the proceedings in this Court until the appraisal process is complete"). Allstate has not made the showing required to compel an appraisal with or without a stay at this stage of the case. As explained, the resolution of Durgin's claims will involve legal and factual issues that are distinct from merely calculating a total loss figure through an appraisal process. Compelling an appraisal and staying this case under

11

these circumstances will only serve to unduly delay discovery and the progress of this case without actually resolving the core legal and factual questions raised by Durgin's claims.

The Court, therefore, **DENIES** Allstate's request to compel an appraisal at this time. The Court, however, denies this request *without prejudice*. The primary focus of Allstate's present motion is a request to dismiss the complaint; Allstate has not presented a case for merely compelling an appraisal and either staying the case or allowing the case to proceed on a parallel track with an appraisal. Accordingly, Allstate may renew its request to compel an appraisal and seek a stay pending appraisal upon the proper showing that an appraisal will promote judicial efficiency and economy by eliminating the matters that the court will have to decide in connection with Durgin's claims. Until Allstate makes such a showing, the Court will not entertain a request to compel an appraisal or to stay this case.

## B. Allstate's Prescription Argument

Allstate next moves to dismiss Durgin's bad faith claim on the ground that it is time-barred. Allstate argues that Durgin's bad faith claim is "fiduciary in nature." [ECF No. 11-1 at 8]. Allstate further argues that since breach of fiduciary duty claims are quintessentially tort claims, Durgin's bad faith claim is subject to the one-year prescription period for delictual claims under Louisiana law. [*Id.*]. Allstate acknowledges that, at the time of its motion, Louisiana case law was unclear as to whether the one-year prescription period for delictual claims applied to bad faith claims under LSA-R.S. §§ 22:1973 and 22:1892, or whether a ten-year prescription period applicable to contract actions applied to these claims. As noted by Allstate in a subsequent filing, the Louisiana Supreme Court decided *Smith v. Citadel Ins. Co.*, 285 So. 3d 1062 (La. 2019) on October 22, 2019. In *Smith*, Louisiana Supreme Court held that the ten-year prescription period for contract claims applies to bad faith claims brought against an insurer under LSA-R.S. § 22:1973. *Id*. at 1070-71.

Although Durgin's claims also rely on allegations that Allstate intentionally breached the requirements of section 22:1892(B)(5), the Court finds that *Smith's* holding applies equally here. Accordingly, the Court **DENIES** Allstate's Motion to Dismiss Durgin's bad faith claim on the basis of prescription.

### C. Allstate's Argument That Plaintiff Has Failed to State a Breach of Contract Claim

Finally, Allstate moves to dismiss on the ground that Durgin has failed to state a breach of contract claim with respect to his Allstate policy. Allstate again contends that Durgin cannot state a breach of contract claim against Allstate for failing to pay the full amount of his total loss prior to the completion of the appraisal process. As explained above, however, Durgin's breach of contract and bad faith claims are distinct from any matters that would be decided by an appraisal under the Allstate policy. Specifically, Durgin's claims are grounded on his allegations that Allstate failed to comply with the valuation methodologies set forth in section 22:1892(B)(5) by using CCC's valuation reports to value total loss vehicles. An appraisal would not resolve these claims. Accordingly, Durgin can state breach of contract and bad faith claims without having to complete the appraisal process under his Allstate insurance policy.

The Court also notes other decisions out of this district involving similar claims and allegations where the court concluded that the plaintiffs adequately pled breach of contract and bad faith claims based on an insurer's failure to comply with the valuation methodologies of section 22:1892(B)(5). *See, e.g., Prudhomme v. Geico Ins. Co.*, 2018 WL 1368335 (W.D. La. Mar. 16, 2018); *Shields v. State Farm Mut. Auto. Ins. Co.*, 19-cv-01359, 2020 WL 838280 (W.D. La. Feb. 19, 2020) (allegations that an insurer's use of the CCC valuation guides violates section 22:1892(B)(5) states a valid claim for breach of contract). These cases are not binding, but they

are persuasive. Accordingly, the Court **DENIES** Allstate's Motion to Dismiss for failure to state a claim.

## IV.
### CONCLUSION

For the reasons stated above, the Court **DENIES** Allstate's Motion to Dismiss Petition for Property Damages, Penalties, Attorney Fees and for Class Certification [ECF No. 11]. With respect to Allstate's request to compel an appraisal, the Court **DENIES** that request without prejudice.

**THUS DONE AND SIGNED** in Chambers on this 16th day of July, 2020.

ROBERT R. SUMMERHAYS
U. S. DISTRICT JUDGE