**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION**

| | |
|---|---|
| GLENN DURGIN, Individually and on behalf of other similarly situated | CIVIL ACTION NO:  6:19-cv-00721-RRS-CBW |
| VERSUS | HONORABLE JUDGE:  Robert R. Summerhays |
| ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY | MAGISTRATE JUDGE:  Carol B. Whitehurst |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
APPRAISAL AND TO STAY PENDING COMPLETION**

Defendant Allstate Property & Casualty Insurance Company ("Allstate") through its undersigned counsel respectfully moves this Court to compel Plaintiff Glenn Durgin ("Plaintiff") to proceed with contractually-mandated appraisal and to stay pending completion.

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

RELEVANT FACTUAL ALLEGATIONS ..................................................................................... 2

ARGUMENT .................................................................................................................................... 4

    I.    Standard ............................................................................................................................... 4

    II.    Binding Appraisal Will Determine The Amount Of Loss Under The Policy, Which Is At Issue In The Litigation. ....................................................................................... 5

    III.    Compelling Appraisal Now and Staying the Case Would Promote Judicial Economy and Efficiency. ............................................................................................................ 6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beasley v. GeoVera Specialty Ins. Co.*,
   No. CIV.A. 13-395, 2013 WL 3187289 (E.D. La. June 20, 2013) ........................................... 11

*Bettor v. Esurance Prop. & Cas. Ins. Co.*,
   Case No. 18-61860-CIV-MORENO (S.D. Fla. entered Mar. 28, 2019) .................................... 6

*Botai v. Safeco Ins. Co. of Illinois*,
   No. 2:14-CV-00445-EJL-REB, 2015 WL 4507486 (D. Idaho July 24, 2015) ........................ 12

*Bradford v. Morehouse Par. Sch. Bd.*,
   No. CV 18-1536, 2019 WL 572981 (W.D. La. Jan. 28, 2019), *report and recommendation adopted*, No. CV 18-1536, 2019 WL 576007 (W.D. La. Feb. 12, 2019) ................................................................................................................................ 7

*Branch v. Springfield Fire & Marine Ins. Co. of Springfield, Mass.*,
   4 So. 2d 806 (La. 1941) ............................................................................................................. 5

*City of Laurel, Miss. v. ARGO GROUP US*,
   No. CIV.A. 2:08CV185KSMT, 2009 WL 112220 (S.D. Miss. Jan. 14, 2009) ....................... 11

*Clausen v. Fid. & Deposit Co. of Maryland*,
   95-0504 (La. App. 1 Cir. 8/4/95), 660 So. 2d 83, *writ denied*, 95-2489 (La. 1/12/96), 666 So. 2d 320 ............................................................................................................. 8

*Crescent City M Dealership, L.L.C. v. Mazda Motor of Am., Inc.*,
   No. CIV. A. 00-1620, 2000 WL 1372965 (E.D. La. Sept. 22, 2000), *aff'd*, 275 F.3d 43 (5th Cir. 2001) ................................................................................................................. 9

*Dore v. Shelter Mut. Ins. Co.*,
   No. 13-CA-0545, 2013 WL 5915141 (La. App. 1st Cir. Nov. 1, 2013) .................................... 5

*Enger v. Allstate Ins. Co.*,
   407 Fed. App'x 191 (9th Cir. 2010) .......................................................................................... 8

*Gordon v. State Farm Fire & Cas. Co.*,
   895 F.2d 1036 (5th Cir. 1990) ................................................................................................... 8

*Hampton v. Audubon Ins. Co.*,
   948 So. 2d 332 (La. App. 2d Cir. 2007) .................................................................................... 8

*Hilltop Bowl, Inc. v. U.S. Fid. & Guar. Co.*,
   259 F. Supp. 649 (W.D. La. 1966) ............................................................................................ 5

*Kelly v. State Farm Fire & Cas. Co.*,
  2014-1921 (La. 5/5/15), 169 So. 3d 328 ..................................................................................10

*Lee v. Sapp*,
  2017-0490 (La. App. 4 Cir. 12/6/17), 234 So. 3d 122, *writ denied*, 2018-0044
  (La. 3/2/18), 269 So. 3d 709 ...................................................................................................10

*Lee v. Verizon Commc'ns, Inc.*,
  837 F.3d 523 (5th Cir. 2016) .....................................................................................................7

*Newman v. Lexington Ins. Co.*,
  No. 06-cv-4668, 2007 WL 1063578 (E.D. La. Apr. 4, 2007) ..........................................4, 5, 11

*Phuong Thi Nuguyen v. S. Fid. Ins. Co.*,
  No. CIV.A. 14-0297, 2014 WL 1276508 (E.D. La. Mar. 27, 2014) ...................................5, 11

*In re Ramu Corp.*,
  903 F.2d 312 (5th Cir. 1990) .....................................................................................................4

*Ruby v. United Services Automobile Association and CCC Information Services, Inc.*,
  No. 8:19-cv-02922 (M.D. Fla July 22, 2020) .......................................................................7, 12

*S.E. Nursing Home Inc. v. St. Paul Fire & Marine Ins. Co.*,
  750 F.2d 1531 (11th Cir. 1985) .................................................................................................8

*Shearer v. State Farm Fire & Cas. Co.*,
  No. CV1609469FLWLHG, 2017 WL 3611743 (D.N.J. Aug. 22, 2017) ............................8, 12

*Southern Fidelity Ins. Co. v. Martin*,
  13-cv-1496, 2014 WL 12719622 (E.D. La. Jan. 3, 2014) .........................................................5

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016), *as revised* (May 24, 2016) ...................................................................7

*St. Charles Par. Hosp. Serv. Dist. No. 1 v. United Fire & Cas. Co.*,
  681 F. Supp. 2d 748 (E.D. La. 2010) ........................................................................................5

*Strange v. Wal-Mart Inc.*,
  No. CV 18-0325, 2018 WL 2269919 (W.D. La. May 16, 2018) ..............................................7

*Theriot v. Midland Risk Ins. Co.*,
  95-2895 (La. 5/20/97), 694 So. 2d 184 ..............................................................................10, 11

*Walker v. Allstate Prop. & Cas. Ins. Co.*,
  No. 2:19-CV-701-RDP, 2020 WL 1235626 (N.D. Ala. Mar. 10, 2020) .................................12

-iv-

**Statutes**

La. Rev. Stat.
    § 22:1892 ............................................................................................................1, 2, 7, 8
    § 22:1892(A)(1) ................................................................................................................10
    § 22:1892(B)(1) ................................................................................................................10
    § 22:1892(B)(5) ........................................................................................................ *passim*
    § 22:1892(B)(5)(c) ..............................................................................................................6
    § 22:1973 ...................................................................................................................1, 2, 7
    § 22:1973(A) .....................................................................................................................10
    § 24:177(B)(1) ..................................................................................................................10

**Other Authorities**

*File a Complaint Online*, LOUISIANA DEPARTMENT OF INSURANCE  (July 29, 2020,
    7:33 PM), *https://www.ldi.la.gov/onlineservices/ConsumerComplaintForm* ...........................10

## **INTRODUCTION**

Allstate initially filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), arguing that completion of appraisal pursuant to Plaintiff's auto insurance policy (the "Policy") was a condition precedent to suit when invoked by either party. (Doc. 11.) The Court denied Allstate's Motion, finding in part:

> The primary focus of Allstate's present motion is a request to dismiss the complaint; Allstate has not presented a case for merely compelling an appraisal and either staying the case or allowing the case to proceed on a parallel track with an appraisal. Accordingly, *Allstate may renew its request to compel an appraisal and seek a stay pending appraisal* upon the proper showing that an appraisal will promote judicial efficiency and economy by eliminating the matters that the court will have to decide in connection with Durgin's claims.

(Doc. 24, p. 12) (emphasis added.) Allstate now respectfully requests the Court to compel Plaintiff to proceed with the contractually-mandated appraisal process at this time, and to stay pending completion. This will promote judicial efficiency and economy because: (a) among other relief, Plaintiff seeks *additional amounts under the Policy* for his total loss vehicle claim, and the parties dispute the amount owed (if any); (b) the Policy contains an appraisal provision, invoked by Allstate, which will determine the "amount of the loss;" (c) the Court has found, "the *binding* appraisal provision in Durgin's Allstate policy is *valid* and *enforceable*" (Doc. 24, p. 8) (emphasis added); and (d) at a minimum, a binding determination of the amount of loss will be *relevant*, even if not determinative, as to any additional relief sought by Plaintiff—and will guide, narrow, or obviate any remaining issues.

Allstate acknowledges that Plaintiff purports to allege counts beyond breach of contract (*i.e.,* statutory claims under La. Rev. Stat. § 22:1892 and La. Rev. Stat. § 22:1973) (Doc. 1, ¶ 35); and the Court found there is not "identity" between such claims and the appraisal process. (Doc. 24, p. 9). However, a binding resolution of the amount of loss under the Policy may inform the Court and the parties concerning further adjudication of the case, including issues

-2-

such as existence and amount of alleged damages, standing, and mootness. Accordingly, the Court should order the parties to move forward with the appraisal process now, and stay proceedings pending completion.

## RELEVANT FACTUAL ALLEGATIONS

On August 12, 2016, Plaintiff's vehicle experienced flood damage. (Doc. 1, ¶ 7.) At the time of the flood, Plaintiff's vehicle was insured under a motor vehicle insurance policy issued by Allstate (the "Policy"). (*Id*. at ¶ 8.) Allstate declared the vehicle a total loss. (*Id*.) In accordance with the terms of the Policy and Louisiana law, Allstate estimated the actual cash value of Plaintiff's vehicle and provided a "Report Summary" to Plaintiff on August 14, 2016. (*Id*. at ¶ 16.)

Plaintiff filed this suit on June 7, 2019. Plaintiff brings a putative class action complaint[1] against Allstate, alleging that Allstate underpaid first-party total loss vehicle claims based on the "Report Summar[ies]" generated by third party vendor CCC. (*Id*. at ¶¶ 23-24). Plaintiff alleges breach of contract and bad faith under La. Rev. Stat. § 22:1892 and La. Rev. Stat. § 22:1973.[2] (*Id*. at ¶¶ 30-31, 35, 40 and 42.) Plaintiff also alleges violation of La. Rev. Stat. § 22:1892(B)(5). (*Id*. at ¶¶ 37-39.) He seeks the difference between the amount tendered by Allstate and the alleged fair market value of his vehicle, penalties, and attorney's fees. (*Id.* at ¶ 45.)

Allstate's payment obligations are governed by the terms of the Policy and Louisiana law. In particular, part VII of the Policy provides in pertinent part:

---

[1] The putative class consists of: "[A]ll past and present Allstate Property and Casualty Insurance Company policyholders who have made claims against their policy for the total loss of a vehicle and had those claims undervalued through the use of the CCC One Market Valuation Report system and/or other unfair valuation tools used by Allstate Property and Casualty Insurance Company." (*Id*. at ¶ 46.)

[2] La. Rev. Stat. § 22:1973 was previously codified as § 22:1220; La. Rev. Stat. § 22:1892 was previously codified as § 22:658.

-3-

> **Protection Against Loss To The Auto**
>
> **Coverage HH**
> **Auto Comprehensive Insurance**
> **We** will pay for direct and accidental loss to **your** insured **auto** or a non-owned **auto** not caused by collision….

(**Exhibit 1**, p. 20.)

> **Right to Appraisal**
> Both **you** and **we** have a right to demand an appraisal of the loss. Each will appoint and pay a qualified appraiser. Other appraisal expenses will be shared equally. The two appraisers, or a judge of a court of record, will choose an umpire. Each appraiser will state the actual cash value and the amount of loss. If the appraisers disagree, they'll submit their differences to the umpire. A written decision by any two of these three persons will determine the amount of the loss.

(*Id*. at p. 23.)

> **Limits of Liability**
> **Our** limit of liability is the least of:
>
> (1) the actual cash value of the property or damaged part of the property at the time of loss, which may include a deduction for depreciation; or
> (2) the cost to repair or replace the property or part to its physical condition at the time of loss using parts produced by or for the vehicle's manufacturer, or parts from other sources, including, but not limited to, non-original equipment manufacturers, subject to applicable state laws and regulations; or
> (3) the limit of liability shown on the Policy Declarations applicable to the damaged property; or
> (4) $500, if the loss is to a covered trailer not described on the Policy Declarations.
>
> Any applicable deductible amount is then subtracted.
>
> If **we**, at **our** option, elect to pay for the cost to repair or replace the property or part, **our** liability does not include any decrease in the property's value, however measured, resulting from the loss and/or repair or replacement. If repair or replacement results in the betterment of the property or part, **you** may be responsible, subject to applicable state laws and regulations, for the amount of the betterment….

(*Id*. at Policy Endorsement AU14699.)

On September 3, 2019, Allstate filed its Motion to Dismiss Petition for Property Damages, Penalties, Attorney's Fees and for Class Certification, moving also to compel appraisal. (Doc. 11.) On September 23, 2019, Plaintiff filed his opposition brief (Doc. 18), and on October 7, 2019 Allstate filed its Reply In Support Of Its Motion To Dismiss For Property Damages, Penalties, Attorney's Fees And For Class Certification (Doc. 21).

On July 16, 2020, the Court issued its Memorandum Ruling and Order, denying Allstate's motion to dismiss, and denying without prejudice Allstate's motion to compel appraisal. (Docs. 24 and 25, respectively.) The Court found that Allstate "*may renew its request to compel an appraisal and seek a stay pending appraisal* upon the proper showing that an appraisal will promote judicial efficiency and economy by eliminating the matters that the court will have to decide in connection with Durgin's claims." (Doc. 24, p. 12) (emphasis added).

## ARGUMENT

### I.  Standard

Both "[t]he timing of a court-compelled appraisal and the question of whether to stay a case pending completion of an appraisal both fall within a court's broad discretion." (Doc. 24, pp. 10-11). *See also Newman v. Lexington Ins. Co.*, No. 06-cv-4668, 2007 WL 1063578 at *4 (E.D. La. Apr. 4, 2007) ("The court has wide discretion when determining whether to stay claims pending the appraisal process." (citing *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990)).)

This Court found that "[c]ourts applying Louisiana law have enforced appraisal provisions by compelling appraisals and, in some cases, staying cases pending the completion of the appraisal process." (Doc. 24, p. 10 (citing *Newman*, 2007 WL 1063578 at *4 (granting Motion to Compel Appraisal and staying case pending completion of appraisal)).) "The primary factor that courts consider in deciding whether to compel an appraisal and stay the case is judicial economy and efficiency, namely whether an immediate appraisal may resolve the

-4-

plaintiff's claims." (*Id*. at p. 11 (citing *Newman*, 2007 WL 1063578 at *4; *Phuong Thi Nuguyen v. S. Fid. Ins. Co.*, No. CIV.A. 14-0297, 2014 WL 1276508, at *1 (E.D. La. Mar. 27, 2014)).)

## II.   Binding Appraisal Will Determine The Amount Of Loss Under The Policy, Which Is At Issue In The Litigation.

Under the plain terms of the Policy, the parties agreed to resolve disputes over the amount of the loss by binding appraisal, upon invocation by either party. The filing of this suit itself evidences a dispute between the parties about the amount of the loss for Plaintiff's total loss vehicle claim—and whatever additional relief he seeks, Plaintiff indisputably seeks further indemnification under the Policy. (Doc. 1, ¶ 30) ("Allstate Property and Casualty Insurance Company [has] refus[ed] to pay the full amount of his 'loss' under the terms and provisions of his insurance policy[.]")  Allstate has demanded appraisal to secure a binding determination of the contractual amount of the loss. ("Appraisal Demand Letter") (attached hereto as **Exhibit 2**).

This Court found that appraisal provisions in Louisiana are "are generally valid and enforceable[.]" (Doc. 24, p. 6 (citing *Dore v. Shelter Mut. Ins. Co.*, No. 13-CA-0545, 2013 WL 5915141 at *3 (La. App. 1st Cir. Nov. 1, 2013); *Southern Fidelity Ins. Co. v. Martin*, 13-cv-1496, 2014 WL 12719622 at *2 (E.D. La. Jan. 3, 2014)).) *See also Branch v. Springfield Fire & Marine Ins. Co. of Springfield, Mass.*, 4 So. 2d 806, 809 (La. 1941) (finding "[p]olicy provisions requiring the insured to submit the amount of his loss to private appraisal" to be valid); *Hilltop Bowl, Inc. v. U.S. Fid. & Guar. Co.*, 259 F. Supp. 649, 650-51 (W.D. La. 1966) (finding appraisal provision valid); *St. Charles Par. Hosp. Serv. Dist. No. 1 v. United Fire & Cas. Co.*, 681 F. Supp. 2d 748, 753 (E.D. La. 2010) (same); *Newman*, 2007 WL 1063578 at *2 (same).

This Court further made a *specific finding* that "the binding appraisal provision in Durgin's Allstate policy is valid and enforceable." (Doc. 24, p. 8).[3]

Here, Plaintiff *explicitly alleges* that Allstate failed to pay the "full amount of [Plaintiff's] 'loss[.]'" (Doc. 1, ¶ 30). This is precisely the type of dispute that the appraisal provision was designed to address. Accordingly, the Court should compel Plaintiff to participate in the contractually-mandated appraisal process.

### III. Compelling Appraisal Now and Staying the Case Would Promote Judicial Economy and Efficiency.

A binding determination of the amount of loss will resolve Allstate's *contractual obligation* to Plaintiff—*i.e.*, what Allstate owes under the Policy—and multiple courts have characterized appraisal as a cost-effective, efficient, alternative dispute resolution mechanism. *See* Report and Recommendation at 5-6, *Bettor v. Esurance Prop. & Cas. Ins. Co.*, Case No. 18-61860-CIV-MORENO (S.D. Fla. entered Mar. 28, 2019) ("[Courts] favor appraisal provisions for which the parties themselves have contracted, preferring appraisal over resolution through judicial means. [C]onsiderable resources that might otherwise be required to resolve the underlying factual and legal issues can be saved at the outset by the appraisers' relatively swift and informal decision as to the amount of the disputed loss.") (citation omitted), ECF No. 29.

---

[3] In response to Plaintiff's contention that La. Rev. Stat. § 22:1892(B)(5)(c) prevents the parties from fully and finally resolving this dispute through a binding appraisal process, the Court found:

> By its terms, section 22:1892(B)(5)(c) only outlines *one possible valuation methodology* for determining ACV when the insurer elects a cash settlement. It does not mandate that his methodology – a non-binding appraisal – also be used to resolve a dispute over an insurer's proposed ACV and cash settlement regardless of which section 22:1892(B)(5) methodology the insurer selects. *Nor does the statute expressly preclude use of a binding appraisal process to resolve a dispute between the insurer and the insured.*

(Doc. 24, p. 8.) (emphasis added). This Court observed that La. Rev. Stat. § 22:1892(B)(5) does not prevent contracting parties from entering into an agreed-upon alternative dispute resolution mechanism for resolving a dispute over the amount of loss owed under an auto policy, which is precisely what Plaintiff and Allstate did.

Not only will binding determination of the amount of the loss resolve Allstate's contractual obligation, it will also be relevant (if not determinative) for any remaining disputes to be adjudicated.[4] For example, Plaintiff contends that use of the CCC valuation methodology is inconsistent with La. Rev. Stat. § 22:1892(B)(5) because such methodology allegedly undervalues total loss vehicles, and also allegedly results in bad faith under La. Rev. Stat. § 22:1973 and § 22:1892. Establishing the amount of the loss under the Policy will assist the prosecution or defense of such allegations, and inform the amount of alleged damages, if any. If Plaintiff suffers no actual damages, then his claims may be moot, or he may not have standing to proceed further. *See Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1548 (2016), *as revised* (May 24, 2016) (plaintiffs must demonstrate a "concrete and particularized" injury to have Article III standing). *See also Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 544 (5th Cir. 2016) (same); *Bradford v. Morehouse Par. Sch. Bd.*, No. CV 18-1536, 2019 WL 572981, at *4 (W.D. La. Jan. 28, 2019) (same), *report and recommendation adopted*, No. CV 18-1536, 2019 WL 576007 (W.D. La. Feb. 12, 2019); *Strange v. Wal-Mart Inc.*, No. CV 18-0325, 2018 WL 2269919, at *2 (W.D. La. May 16, 2018) (same). Even if Allstate allegedly had a duty to use a different valuation method, then the failure to discharge that duty does not itself give rise to a claim for breach of contract unless there is resulting injury. Moreover, as explained further below, if

---

[4] In *Ruby v. United Services Automobile Association and CCC Information Services, Inc.*, No. 8:19-cv-02922 (M.D. Fla July 22, 2020) ("*Ruby*") (Order attached hereto as **Exhibit 3**), the plaintiff sued USAA for breach of contract for underpayment of plaintiff's total loss claims based on the use of CCC valuation methodology. *Ruby*, Doc. 1. The plaintiff also named CCC as a defendant in the suit, bringing claims for tortious interference with performance of a contract, breach of contract as a third party beneficiary, and for civil conspiracy against both USAA and CCC. *Id*. On USAA and CCC's motions to compel appraisal and dismiss, the court, like here, denied the motion to dismiss. *See* Exhibit 3 at p. 2. The court, however, compelled appraisal because "USAA has now invoked its rights thereunder; and thus, the appraisal process must be undertaken." *Id*. The court further stayed *all claims* against USAA until completion of the appraisal process, but found that "[a]s to CCC there is no right to appraisal, and its rights and obligations, liabilities and defenses are not tied to such a process" and so "the claims against it may proceed." *Id*. at 3. Here, unlike in *Ruby*, CCC is not a party to the suit, and there are no claims that need proceed while the parties submit to the appraisal process.

-7-

Plaintiff has not been damaged, he may lack standing to complain of violation of La. Rev. Stat. § 22:1892(B)(5).

Additionally, if Plaintiff has no contractual damages, then he has no basis for statutory bad faith claims under Louisiana law. *See Gordon v. State Farm Fire & Cas. Co.*, 895 F.2d 1036, 1039 (5th Cir. 1990) ("[T]he language of Section 22:[1892] leads us to conclude that the legislature did not intend to permit recovery of 22:[1892] damages in cases in which contractual damages are not awarded, for whatever reason."); *Hampton v. Audubon Ins. Co.*, 948 So. 2d 332, 334 (La. App. 2d Cir. 2007) ("The language of La. R.S. 22:[1892] suggests that the legislature did not intend to permit recovery of La. R.S. 22:[1892] penalties in cases in which contractual damages are not awarded."); *Clausen v. Fid. & Deposit Co. of Maryland*, 95-0504 (La. App. 1 Cir. 8/4/95), 660 So. 2d 83, 86 (finding insured was "not entitled to relief under La.R.S. 22:[1892 or 1973]" where underlying breach of contract claim was not valid)*, writ denied*, 95-2489 (La. 1/12/96), 666 So. 2d 320. *See also Enger v. Allstate Ins. Co.*, 407 Fed. App'x 191, 193 (9th Cir. 2010) (compelling appraisal where complaint alleged insurer used improper valuation method and finding that "until an appraisal is completed, it is impossible to know whether [plaintiff's] claim in fact was undervalued, such that her claims for breach of contract, breach of the covenant of good faith and fair dealing, and Cal. Bus. & Prof. Code § 17200 *et seq*., are viable"); *Se. Nursing Home Inc. v. St. Paul Fire & Marine Ins. Co.*, 750 F.2d 1531, 1539 (11th Cir. 1985) (holding insured had no bad faith claim for failure to pay because appraisal process had not yet determined amount of loss); *Shearer v. State Farm Fire & Cas. Co*., No. CV1609469FLWLHG, 2017 WL 3611743, at *3 (D.N.J. Aug. 22, 2017) ("Plaintiffs' position regarding the proper valuation method is immaterial to whether State Farm may seek an appraisal under the Policy….

Moreover, an appraisal will determine the amount of the loss and has the potential to resolve the dispute between the parties.").

Finally, if Plaintiff's breach of contract and bad faith claims fail, then Plaintiff cannot recover directly for violation of La. Rev. Stat. § 22:1892(B)(5) because that subsection does not provide a stand-alone private cause of action.[5] As this Court previously found, that subsection merely sets forth "three different methods for formulating a cash settlement based on the actual cost to purchase a comparative vehicle." (Doc. 24, p. 7.) But nothing on the face of the subsection permits policyholders to directly sue for violation. *See Crescent City M Dealership, L.L.C. v. Mazda Motor of Am., Inc.*, No. CIV. A. 00-1620, 2000 WL 1372965, at *3 (E.D. La. Sept. 22, 2000) ("The Louisiana legislature knows how to create a private right of action when it intends to do so. For example, in the Louisiana Unfair Trade Practices and Consumer Protection

---

[5] La. Rev. Stat. § 22:1892(B)(5) states:

> When an insurance policy provides for the adjustment and settlement of first-party motor vehicle total losses on the basis of actual cash value or replacement with another of like kind and quality, and the insurer elects a cash settlement based on the actual cost to purchase a comparable motor vehicle, such costs shall be derived by using one of the following:
>
> (a) A fair market value survey conducted using qualified retail automobile dealers in the local market area as resources. If there are no dealers in the local market area, the nearest reasonable market can be used.
>
> (b) The retail cost as determined from a generally recognized used motor vehicle industry source; such as, an electronic database, if the valuation documents generated by the database are provided to the first-party claimant, or a guidebook that is available to the general public. If the insured demonstrates, by presenting two independent appraisals, based on measurable and discernable factors, including the vehicle's preloss condition, that the vehicle would have a higher cash value in the local market area than the value reflected in the source's database or the guidebook, the local market value shall be used in determining the actual cash value.
>
> (c) A qualified expert appraiser selected and agreed upon by the insured and insurer. The appraiser shall produce a written nonbinding appraisal establishing the actual cash value of the vehicle's preloss condition.
>
> (d) For the purposes of this Paragraph, local market area shall mean a reasonable distance surrounding the area where a motor vehicle is principally garaged, or the usual location of the vehicle covered by the policy.

Law (LUTPCPL), the legislature explicitly provided a right of action for private individuals and entities, as well as for an administrative body."), *aff'd*, 275 F.3d 43 (5th Cir. 2001). *See also* La. Rev. Stat. § 24:177(B)(1) ("The text of a law is the best evidence of legislative intent."); *Theriot v. Midland Risk Ins. Co.*, 95-2895 (La. 5/20/97), 694 So. 2d 184, 186 ("The starting point in the interpretation of any statute is the language of the statute itself…. Where a part of an act is to be interpreted, it should be read in connection with the rest of the act and all other related laws on the same subject." (citations omitted)). Moreover, policyholders can attempt to raise complaints about alleged violations through the Louisiana Department of Insurance.

*See, e.g., File a Complaint Online*, LOUISIANA DEPARTMENT OF INSURANCE (July 29, 2020, 7:33 PM), *https://www.ldi.la.gov/onlineservices/ConsumerComplaintForm.*

To illustrate why La. Rev. Stat. § 22:1892(B)(5) offers no private right of action, it is helpful to compare it to La. Rev. Stat. § 22:1892(B)(1). The later provision (La. Rev. Stat. § 22:1892(B)(1)) *expressly contemplates* an insured's recovery for "penalties" where the insurer fails to pay a claim due under § 22:1892(A)(1) "within thirty days after receipt of such satisfactory written proofs and demand therefor" or fails "to make a written offer to settle any property damage claim … within thirty days after receipt of satisfactory proofs of loss of that claim" where "such failure is found to be arbitrary, capricious, or without probable cause." The Louisiana Supreme Court found that a similar provision for bad faith damages gave rise to a private cause of action. *See Kelly v. State Farm Fire & Cas. Co.*, 2014-1921 (La. 5/5/15), 169 So. 3d 328, 336 ("The plain language of La. R.S. 22:1973(A) is favorable to finding a cause of action for an insured. Most notably, after describing the duties owed by an insurer, La. R.S. 22:1973(A) concludes: 'Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.'"). *Cf. Lee v. Sapp*, 2017-0490 (La. App. 4 Cir. 12/6/17), 234

So. 3d 122, 134 (finding third-party claimant failed to state a cause of action under La. Rev. Stat. § 22:1892(A)(1), which requires payment "of any claim due any insured" within thirty days of satisfactory proof of loss and so applies only to insureds), *writ denied*, 2018-0044 (La. 3/2/18), 269 So. 3d 709.

The legislature could have similarly permitted an insured to recover damages for violation of La. Rev. Stat. § 22:1892(B)(5), *but consciously chose not to*. *See Theriot*, 694 So. 2d at 187 ("Moreover, the time honored maxim, *expressio unius et exclusio alterius* is yet another helpful guide. It teaches us that when the legislature specifically enumerates a series of things, the legislature's omission of other items, which could have been easily included in the statute, is deemed intentional…. And we have held that the legislature is presumed to act with full knowledge of well settled principles of statutory construction." (citations omitted).)

For all of these reasons, compelling appraisal and staying this suit pending completion would promote the principles of judicial economy and efficiency and is consistent with multiple decisions within Louisiana and the Fifth Circuit. *See Newman*, 2007 WL 1063578, at *4 (granting Motion to Compel Appraisal and staying case pending completion of appraisal); *Phuong Thi Nuguyen*, 2014 WL 1276508 at *1 ("The Court finds it would serve the interests of judicial economy to stay the proceedings in this Court until the appraisal process is complete."); *Beasley v. GeoVera Specialty Ins. Co.*, No. CIV.A. 13-395, 2013 WL 3187289, at *4 (E.D. La. June 20, 2013) (compelling appraisal and staying case pending completion); *City of Laurel, Miss. v. ARGO GROUP US*, No. CIV.A. 2:08CV185KSMT, 2009 WL 112220, at *3 (S.D. Miss. Jan. 14, 2009) ("The court therefore finds that even though a stay will leave the case open, it would nonetheless serve the interests of judicial economy by ensuring that the contractually mandated

appraisal process will be completed in a timely manner or else be resolved by proceedings in this court.").

Moreover, beyond these authorities in the Fifth Circuit, courts across numerous jurisdictions have compelled appraisal and stayed the case pending completion. *See, e.g., Ruby* (Exhibit 3) (compelling appraisal and denying motion to dismiss, instead staying suit which alleged breach of contract and civil conspiracy for use of CCC valuation methodology); *Walker v. Allstate Prop. & Cas. Ins. Co.*, No. 2:19-CV-701-RDP, 2020 WL 1235626, at *4 (N.D. Ala. Mar. 10, 2020) (compelling appraisal and finding: "As such, this court finds that unless and until an appraisal is completed, it is impossible for the parties or the court to know whether Plaintiff's claim was, in fact, undervalued."); *Shearer*, 2017 WL 3611743 at *3 (granting motion to compel appraisal and stay case pending completion); *Botai v. Safeco Ins. Co. of Illinois*, No. 2:14-CV-00445-EJL-REB, 2015 WL 4507486, at *5 (D. Idaho July 24, 2015) (compelling appraisal and staying case, finding "[t]he value determined by the appraisal panel may be, in part, a basis for determining whether and to what extent Plaintiff has been damaged. Hence, staying the non-arbitrable bad faith claims will prevent prejudice to either party and may well encourage the parties to settle" (citation omitted).)

**WHEREFORE**, Allstate respectfully requests this Court to enter an Order compelling appraisal and staying the case pending completion.

Respectfully Submitted,

*/s/ Judy Y. Barrasso*
Judy Y. Barrasso, 2814
Laurence D. LeSueur, 35206
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
Facsimile:  (504) 589-9701
jbarrasso@barrassousdin.com
llesueur@barrassousdin.com

Mark L. Hanover (*pro hac vice*)
Kathleen V. Kinsella (*pro hac vice*)
Dentons US LLP
233 S. Wacker Dr., Suite 5900
Chicago, IL 60606
(312) 876-8000
mark.hanover@dentons.com
kathleen.kinsella@dentons.com

*Attorneys for Defendant*
*Allstate Property and Casualty Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2020, I caused a true and correct copy of the foregoing DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL APPRAISAL AND TO STAY CASE PENDING COMPLETION to be served upon all persons and entities registered and authorized to receive such service through the CM/ECF system.

   /s/ *Judy Y. Barrasso*

*Attorney for Defendant*
*Allstate Property and Casualty Insurance Company*