UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| GLENN DURGIN | Civil Action No. 6:19-0721 |
| versus | Judge Robert R. Summerhays |
| ALLSTATE PROPERTY & CAS. INS. CO. | Magistrate Judge Carol B. Whitehurst |

**MEMORANDUM RULING**

Pending before the undersigned is the Motion to Compel Appraisal and to Stay Case Pending Completion [Doc. 26] filed by the defendant, Allstate Property & Casualty Company ("Allstate"). The motion is opposed by the plaintiff, Glenn Durgin ("plaintiff") [Doc. 29], and Allstate filed a reply brief [Doc. 32]. After review of the briefs and the applicable law, the motion is DENIED.

**I. BACKGROUND**

This section of the Court's ruling is largely taken from the Memorandum Ruling issued by the district judge on July 16, 2020 (Doc. 24), wherein the district judge denied Allstate's previously filed motion to compel the plaintiff's participation in the appraisal process without prejudice. Plaintiff Glenn Durgin is a Louisiana resident who holds an automobile insurance policy issued by Allstate. Durgin's 2013 Ford F-150 truck was damaged in the South Louisiana floods of August 2016, and the flood damage exceeded the value of the truck. (Plaintiff's Complaint, Doc.

1

1 at ¶ 7). Durgin filed a claim with Allstate. (*Id*. at ¶ 8). Durgin's insurance policy requires Allstate to pay the actual cash value ("ACV") of a vehicle that, like Durgin's truck, sustains a total loss. (*Id*. at ¶ 9). Beginning in 2012, Allstate allegedly started using CCC One Market Valuation Reports marketed and sold by CCC Information Services to determine the ACV of insured vehicles that sustain a total loss. (*Id*. at ¶ 10). CCC's valuation report for Durgin's truck assigned a "base value" of $32,699 and, after accounting for various adjustments, an "adjusted vehicle value" of $34,384. (*Id*. at ¶¶ 16-18) Durgin alleges that CCC applies a "condition adjustment" based on comparable vehicles "but without knowing or examining the condition of the comparables used." (*Id*. at ¶ 19) Durgin also alleges that CCC "employs an algorithm to determine the adjustment amount for comparables that is based on national databases for vehicles and not local markets." (*Id*. at ¶ 20) According to Durgin, CCC's methodology consistently undervalues the ACV for total loss vehicles. For example, Durgin cites the National Automobile Dealers Association ("NADA") report for his truck. This report assigns a value for the truck of $38,685.00, which is approximately $4,301 higher than CCC's adjusted vehicle value. (*Id*. at ¶ 22).

Durgin contends that Allstate's reliance on CCC's One Market Valuation Reports to determine a total loss vehicle's ACV violates LSA-R.S. 22:1892(B)(5). This provision states:

> When an insurance policy provides for the adjustment and settlement of first-party motor vehicle total losses on the basis of actual cash value or replacement with another of like kind and quality, and the insurer elects a cash settlement based on the actual cost to purchase a comparable motor vehicle, such costs shall be derived by using one of the following:
>
> (a) A fair market value survey conducted using qualified retail automobile dealers in the local market area as resources. If there are no dealers in the local market area, the nearest reasonable market can be used.
>
> (b) The retail cost as determined from a generally recognized used motor vehicle industry source; such as, an electronic database, if the valuation documents generated by the database are provided to the first-party claimant, or a guidebook that is available to the general public. If the insured demonstrates, by presenting two independent appraisals, based on measurable and discernable factors, including the vehicle's preloss condition, that the vehicle would have a higher cash value in the local market area than the value reflected in the source's database or the guidebook, the local market value shall be used in determining the actual cash value.
>
> (c) A qualified expert appraiser selected and agreed upon by the insured and insurer. The appraiser shall produce a written nonbinding appraisal establishing the actual cash value of the vehicle's preloss condition.
>
> (d) For the purposes of this Paragraph, local market area shall mean a reasonable distance surrounding the area where a motor vehicle is principally garaged, or the usual location of the vehicle covered by the policy.

LSA-R.S. § 22:1892(B)(5). Durgin alleges that CCC's valuation reports violate section 22:1892(B)(5) because they are not a "generally recognized used motor vehicle industry source" but instead are "employed for the specific purpose of undervaluing claims" of Allstate's policyholders. (*Id.* at ¶ 37). According to Durgin,

3

CCC's reports are not generally used by the motor vehicle industry but are "marketed exclusively to insurance companies with the intent of providing increased profits to its insurance company customers by undervaluing total loss vehicle claims." (*Id*. at ¶ 38). Durgin further alleges that Allstate uses the CCC reports to intentionally undervalue the total loss claims of its policyholders, and that Allstate's actions breached the policy and amount to bad faith. (*Id*. at ¶¶ 23-24). In this regard, Allstate allegedly "knew or should have known" that other valuation reports, such as reports issued by the NADA or by Kelley Blue Book, are generally accepted by the industry for purposes of valuing total loss vehicles. (*Id*. at ¶ 25). Durgin alleges that Allstate's actions also violated its "affirmative duty to adjust claims fairly under the requirement of LSA-R.S. 22:892 and LSA-R.S. 22:1973 and that Allstate is therefore liable for penalties and attorney fees." (*Id.* at ¶ 35). Durgin asserts his claims individually as well as on behalf of a proposed class of all past and present Allstate policyholders who have made claims against their policy for the total loss of a vehicle and had those claims "undervalued through the use of the CCC One Market Valuation Report system and/or other unfair valuation tools used by Allstate Property & Casualty Insurance Company." (*Id*. at ¶ 46).

On September 3, 2019, Allstate filed a Motion to Dismiss (Doc. 11), arguing that Durgin's Allstate policy contains a provision requiring a binding appraisal at the request of either Durgin or Allstate, and that Allstate timely asserted its right to

4

demand an appraisal. Accordingly, Allstate argued that Durgin's claims should be dismissed pending completion of the appraisal, and that the Court should enter an order compelling Durgin to participate in the appraisal process.[1] In his ruling issued on July 16, 2020, the district judge denied Allstate's motion to compel appraisal, without prejudice, subject to its right to re-urge the motion at a later date. The pending motion is Allstate's renewed request to compel appraisal and to stay the matter pending completion of that appraisal.

## II. LAW AND ANALYSIS

Durgin's Allstate policy states:

**Right To Appraisal**

Both **you** and **we** have a right to demand an appraisal of the loss. Each will appoint and pay a qualified appraiser. Other appraisal expenses will be shared equally. The two appraisers, or a judge of a court of record, will choose an umpire. Each appraiser will state the actual cash value and the amount of loss. If they disagree, they'll submit their differences to the umpire. A written decision by any two of these three persons will determine the amount of the loss. (Allstate Policy, Exh. 1 to Allstate's Motion to Dismiss [ECF No. 11-2] at 23).

In its Memorandum Ruling issued on July 16, 2020, the district judge determined that the appraisal provision in Durgin's Allstate policy is valid and enforceable. Nevertheless, at that time, the district judge denied Allstate's motion

---

[1] Allstate alternatively argued that Durgin's claims are prescribed and that he failed to state a claim upon which relief could be granted. These arguments were denied and dismissed by the district judge.

to compel appraisal, without prejudice, because the primary focus of Allstate's motion at that time was a request to dismiss the complaint. The district judge expressly found that Allstate had not presented a case for merely compelling an appraisal and either staying the case or allowing the case to proceed on a parallel track with an appraisal. Accordingly, the district judge allowed Allstate to renew its request to compel an appraisal and seek a stay pending appraisal upon the proper showing that an appraisal will promote judicial efficiency and economy by eliminating the matters that the court will have to decide in connection with Durgin's claims. Allstate's current motion argues these points.

As explained by the district judge, courts applying Louisiana law have enforced appraisal provisions by compelling appraisals and, in some cases, staying cases pending the completion of the appraisal process. *See, e.g.*, *Newman v. Lexington Ins. Co.*, No. 06-cv-4668, 2007 WL 1063578 at * 4 (E.D. La. Apr. 4, 2007) (denying Motion to Dismiss but granting Motion to Compel Appraisal and staying case pending completion of appraisal). The timing of a court-compelled appraisal and the question of whether to stay a case pending completion of an appraisal both fall within a court's broad discretion. *See, e.g., Newman*, 2007 WL 1063578 at * 4 ("The court has wide discretion when determining whether to stay claims pending the appraisal process.") (citing *In re Ramu Corp.,* 903 F.2d 312, 318 (5th Cir. 1990)) *Linnus v. Metropolitan Lloyds Ins. Co. of Tex.*, No. 19-cv-3163,

6

2020 WL 359905 at *3-4 (S.D. Tex. Jan. 22, 2020)(addressing a motion to compel an appraisal under Texas law and noting that "the court does have some discretion as to the timing of the appraisal."). Accordingly, courts have denied or deferred requests to stay cases pending the completion of an appraisal even where the courts have granted a request to compel the appraisal. *See*, *e.g., Green Project, Inc.*, 2008 WL 11355074 at *5 (ordering plaintiff to participate in the appraisal process required by the insurance policy but denying request to stay case pending completion of the appraisal process); *Boyd v. Occidental Fire & Cas. Co. of N. Carolina*, No. 10-cv-0672, 2011 WL 4062383 at * 1-2 (M.D. La. Sept. 13, 2011)(denying motion to stay case pending completion of appraisal); *Martin* 2014 WL 12719622 at * 3 (granting motion to compel appraisal but deferring request to stay case pending completion of appraisal).

The primary factor that courts consider in deciding whether to compel an appraisal and stay the case is judicial economy and efficiency, namely whether an immediate appraisal may resolve the plaintiff's claims. *See Newman*, 2007 WL 1063578 at * 4 (granting stay and observing that an "[a]ppraisal may settle the dispute in this case"); *Nuguyen*, 2014 WL 1276508 at * 1 (concluding that it "would serve the interests of judicial economy to stay the proceedings in this Court until the appraisal process is complete").

In the pending motion, Allstate argues that a binding determination of the amount of loss will resolve Allstate's *contractual obligation* to the plaintiff -- *i.e.*, what Allstate owes under the Policy -- and will be relevant for any remaining disputes to be adjudicated. For example, the plaintiff contends that use of the CCC valuation methodology is inconsistent with La. Rev. Stat. §22:1892(B)(5) because such methodology allegedly undervalues total loss vehicles, and also allegedly results in bad faith under La. Rev. Stat. §22:1973 and §22:1892. Allstate argues that establishing the amount of the loss under the Policy will assist the prosecution or defense of such allegations, and inform the amount of alleged damages, if any. Allstate argues that if the plaintiff suffers no actual damages, then his claims may be moot, or he may not have standing to proceed further. Moreover, Allstate argues that even if it had a duty to use a different valuation method, then the failure to discharge that duty does not itself give rise to a claim for breach of contract unless there is resulting injury, which the appraisal process will resolve.

Allstate also argues that the appraisal process will inform the plaintiff's claim for statutory bad faith claims under Louisiana law, arguing that if the plaintiff has no contractual damages, he has no basis for statutory bad faith damages. Finally, Allstate argues that if the plaintiff's breach of contract and bad faith claims fail, then the plaintiff cannot recover directly for violation of La. Rev. Stat. §22:1892(B)(5), because that subsection does not provide a stand-alone private cause of action. For

all of these reasons, Allstate argues that compelling an appraisal and staying this suit pending completion would promote the principles of judicial economy and efficiency.

In *Prudhomme v. Geico Ins. Co.*, (W.D. La. Feb. 9, 2018), *report and recommendation adopted*, 2018 WL 1368335 (W.D. La. Mar. 16, 2018), the plaintiff similarly alleged that Geico's use of the CCC Valuescope resulted in unfairly low valuations of vehicles. GEICO sought to compel an appraisal, arguing that appraisal could reveal that the plaintiff "was not underpaid, resolving his claims, leaving [the plaintiff] with neither a concrete and particularized injury-in-fact nor a remedy under the law." 2018 WL 1371240, at *7. In rejecting this argument, the undersigned explained:

> As to GEICO General's contention that the appraisal process could resolve Jack's claims in this lawsuit, the Court disagrees. Here, Jack claims that GEICO General's use of the CCC Valuescope system ("System") violates Louisiana law. He alleges that GEICO General's System used to appraise their insured's total loss vehicles "intentionally undervalues the loss," and therefore breaches its contractual obligations to its insureds. *R.67*, *¶28*. The Court disagrees that compelling appraisal will resolve Jack's claims in this lawsuit.

2018 WL 1371240, at *7.

As the district judge noted in his ruling, the legal and factual questions that undergird Durgin's claims involve Allstate's compliance with Louisiana law, not the mere calculation of a total loss figure for his truck. Both the district judge and the undersigned conclude that an appraisal would not resolve these legal and factual

9

questions. Louisiana courts have emphasized that the role of an appraiser appointed to determine the total loss under a property insurance policy is "merely to ascertain the cash value and the extent of the insured's loss. ...." *Girard*, 198 So. 2d at 446. The appraiser's role is "ministerial" and involves "only the ascertainment of facts, requiring no hearing nor the exercise of judicial discretion upon the question in dispute." *Id.* Here, the plaintiff is alleging more than the loss of the vehicle. In his Amended Complaint, the plaintiff alleges that Allstate uses the CCC reports to intentionally undervalue the total loss claims of its policyholders, and that Allstate's actions breached the policy and amount to bad faith. Plaintiff alleges that Allstate's actions also violated its "affirmative duty to adjust claims fairly under the requirement of LSA-R.S. 22:892 and LSA-R.S. 22:1973 and that Allstate is therefore liable for penalties and attorney fees," and he asserts his claims individually as well as on behalf of a proposed class of all past and present Allstate policyholders who have made claims against their policy for the total loss of a vehicle and had those claims "undervalued through the use of the CCC One Market Valuation Report system and/or other unfair valuation tools used by Allstate Property & Casualty Insurance Company." Based on the foregoing, the undersigned concludes that an appraisal would not foster judicial economy and efficiency in this matter or resolve the entirety of the plaintiff's claims.

Additionally, this Court has wide discretion when determining whether to stay claims pending the appraisal process. *See, e.g., Newman*, 2007 WL 1063578 at *4, citing *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990). *See also Linnus v. Metropolitan Lloyds Ins. Co. of Tex.*, 2020 WL 359905 at *3-4 (S.D. Tex. Jan. 22, 2020) (addressing a motion to compel an appraisal under Texas law and noting that "the court does have some discretion as to the timing of the appraisal.") Allstate has not made the showing required to compel an appraisal with or without a stay at this stage of the case. Compelling an appraisal and staying this case under these circumstances will only serve to unduly delay discovery and the progress of this case without actually resolving the core legal and factual questions raised by Durgin's claims. Accordingly, Allstate's Motion to Compel Appraisal and to Stay Case Pending Completion [Doc. 26] is denied.

### III. CONCLUSION

For the reasons stated herein, the Motion to Compel Appraisal and to Stay Case Pending Completion [Doc. 26] filed by Allstate is DENIED in its entirety.

**THUS DONE AND SIGNED** this 1st day of December, 2020 at Lafayette, Louisiana.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE